# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| FRANCESCA N. CASTLEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-0497-DKL-WTL |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

*Entry on Judicial Review*

Francesca N. Castlel applied for social security disability benefits and supplemental income security benefits. An Administrative Law Judge (ALJ) denied her claims, the Appeals Council denied review, and Castlel brought this action for judicial review. The parties have consented to the Magistrate Judge's jurisdiction. For the reasons that follow, the ALJ's decision will be affirmed.

*Background*

Castlel alleges disability since February 2012 due to chronic fatigue resulting from chemotherapy and radiation treatments for breast cancer. [R. 199.] In October 2014, the ALJ held a hearing at which Castlel testified. She was 32 years old at that time and lived with her parents. [R. 32.]

Castlel was diagnosed with cancer in her right breast in November 2011. She had a lumpectomy at which time 11 to 12 lymph nodes were removed. After surgery to remove the tumor, she underwent chemotherapy and radiation. [R. 38.] She was on

medical leave during her treatment and returned to work in June 2012. [R. 39.] However, she did not work between December 2012 and February 2013 because of lymphedema (swelling accompanied by pain or discomfort) of her right arm and hand. [*Id*.] She is right-handed. [R. 33.] The lymphedema improved with physical therapy, and she has a compression glove that she uses one or two hours a day and a compression sleeve to wear at night. [R. 39, 42.]

At the time of the hearing, Castlel had been working part-time, 20 hours or less per week, at JC Penney as a clerk. This work required her to stand or walk 4-6 hours each day. [R. 33, 39.] Castlel has a 20-pound weight restriction on lifting with her right arm. [R. 34.]

Castlel claims that she cannot work due to chronic fatigue. She had a complete workup for fatigue, which was negative except for depression. [R. 20, 748-49.] The fatigue has not improved since her chemotherapy. [R. 41.] Castlel works out at a gym two or three times each week, but she said this does not help with her fatigue. She testified that she also has problems with her memory and concentration. [R. 44.] She has been treated for an adjustment disorder and depression.

Medical records reflect that Castlel began chemotherapy in February 2012, reporting minimal fatigue at her second round. [R. 390.] At her fourth round of chemotherapy, her oncologist noted that she was tolerating the treatment well. [R. 392.] In May it was noted that she had "done well" and her only complaint was of back pain. [R. 397.] In August 2012, while she was receiving radiation therapy, Castlel reported to Dr. Lida Mina that she was recovering well and her energy level was good. [R. 403.] An

oncologist noted that Castlel's fatigue was mild and not severe enough to require any break in treatment. [R. 676, 679.] In October that year, Castlel reported to her oncologist that she was doing well and her fatigue had largely returned to baseline, though she had some slight fatigue requiring occasional naps after work. [R. 669.] Dr. Mina noted in May 2013 that Castlel had begun working 6 hours at a time in a job which required her to be on her feet for 6 hours and rquired lifting. [R. 657.]

In June 2013, Castlel was seen in an oncology clinic and reported "significant fatigue." [R. 655.] She was working 6 hours a day; her fatigue was getting worse, and she was not feeling better. She had been feeling depressed. Dr. Mina believed that her fatigue could be related to her depression and mood and advised that she might have to restart medication for depression. [R. 656.]

That same month, Dr. Mauro Agnelneri conducted a consultative physical exam of Castlel at the request of the state agency. He noted that she was "overcome by fatigue" but she was nonetheless working part-time. [R. 642.] At a consultative mental status examination also in June, Castlel stated that she was disabled due to fatigue, lymphedema, and "chemo-brain." She reported that she had not regained her normal energy level and had to rest after working because it made her tired. [R. 647-53.] The psychologist thought that Castlel's low energy level could be due in part to her depression. [R. 653.] He diagnosed Major Depressive Disorder, Moderate. [*Id.*]

In July 2013, Castlel was seen by her primary care clinic for depression. She was tired and fatigued. The physician thought her fatigue was likely due to depression rather than her cancer treatment. [R. 745.]

In August 2013, at her oncology clinic, Castlel reported fatigue, which was "getting significantly worse" and was "not improving." [R. 748-49.] She said that she was fatigued after work. [R. 748.] In contrast, Castlel reported to another physician that same month that she was doing well and she had no complaints other than she was not recovering her strength to her satisfaction. [R. 772.] In October 2013, Castlel again reported fatigue to the oncology clinic. [R. 774-75.] On examination, Dr. Kathy Miller noted that Castlel "appears quite well" [R. 774] and "clinically is without evidence of disease recurrence." [R. 775.] Dr. Miller noted that it was "well-documented [that] approximately 5% to 10% of patients who have ongoing difficulty with much more severe fatigue after completing chemotherapy and radiation" and that "[p]revious studies to try to identify an underlying physiologic explanation for the fatigue have been largely unremarkable." [*Id.*] Dr. Miller suggested a trial of Ritalin for the fatigue.

The next month (November 2013), Castlel reported no improvement in her fatigue while taking Ritalin. [R. 776-77.] Dr. Miller's notes reflect that Castlel "does continue to work full time" but was "really quite exhausted at the end of the day." [R. 777.] Dr. Miller advised Castlel that she thought cutting back her work schedule would aggravate her fatigue. [*Id.*] In December, Dr. Ernest Carrasco evaluated Castlel at a primary care clinic. He noted that her stamina had been undermined after chemotherapy and that she

4

had not been able to recuperate her functionality to the level where it had been before. [R. 778.]

In April 2014, Castlel saw her primary care physician, Dr. Julie Vannerson. Castlel's only complaint at the time was "longstanding fatigue" with little success from various therapies. [R. 782.] Dr. Vannerson recommended various forms of exercise in addition to what Castlel was already doing to improve or manage her fatigue. The physician noted that Castlel's fatigue was "likely a long term sequela of her chemotherapy." [R. 783.] Castlel's complaints of fatigue continued. [*See, e.g.*, R. 755.]

In September 2014, Castlel had a neurological consultation with Dr. Jared Bosch for short-term memory problems. She said that she had difficulty with attention and concentration. [R. 818.] After conducting an examination, Dr. Bosch opined that Castlel's "most likely diagnosis is subjective cognitive complaints." [R. 821.] He noted that she had moderate to severe depressive symptoms and opined that her depression played "a major role in her cognitive complaints." [*Id.*] He counseled her in the importance of regular daily exercise. [*Id.*]

That same month, Dr. Vannerson provided a written functional evaluation in support of Castlel's claims for benefits. She diagnosed Castlel with "right arm lymphedema, chronic fatigue, and depression secondary to invasive ductal cell carcinoma of the breast." [R. 760.] Castlel's prognosis was noted as "chronic." [*Id.*] The only restrictions that Dr. Vannerson imposed with regarding to performing sustained work activities were as follows: "Patient may not lift more than 20 lbs. Patient may not stand or walk more than 4-6 hours daily." [*Id.*] Dr. Vannerson opined that Castlel could

5

sit for 8 hours at a time and a total of 8 hours during an 8-hour workday, stand for 6 hours at a time, and stand and walk in combination for 6 hours of an 8-hour day. [R. 761.]

Two state-agency physician consultants and two state-agency psychologist consultants reviewed the file in 2013 and concluded that Castlel did not meet or equal any Listing. [R. 62-64, 70-73, 79-81.] In fact, the consultants determined that she did not have any severe physical or psychological impairments.

A vocational expert (VE) testified at the hearing before the ALJ that Castlel has past work experience as a retail sales clerk, which is semi-skilled and light work. [R. 51.] The ALJ posed a hypothetical to the VE, asking whether an individual with the RFC that the ALJ ultimately found Castel to have would be able to perform Castlel's past work. The VE responded in the affirmative, stating that such an individual could work as a sales clerk. [R. 52-53.] The ALJ posed a second hypothetical to the VE, assuming an individual who could lift, carry, push and pull 10 pounds occasionally and under 10 pounds frequently, sit 6 hours during an 8-hour workday, and stand and walk in combination for 2 hours in an 8-hour workday and with the same non-exertional limitations that the ALJ found Castlel to have, and asked if such an individual could perform any work. The VE testified that such an individual could perform work as an information clerk, document preparer, and addressing clerk, all of which were unskilled, sedentary jobs. [R. 54-55.] The VE also testified that if a hypothetical individual had the same restrictions that Castlel testified to having at the hearing, such an individual would be able to perform the sedentary jobs he had identified. [R. 55.]

The ALJ found that Castlel had not engaged in substantial gainful activity since her alleged onset date of February 28, 2012. [R. 12.] She determined that Castlel suffered from residuals of surgery and treatment for carcinoma of the right breast, which was a severe impairment. But the ALJ found that Castlel did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [R. 13, 16.] The ALJ determined that Castlel has the residual functional capacity (RFC) to perform light work as defined in the regulations, and specifically including that:

> [S]he is able to lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. The claimant can sit, stand and walk six hours each in the eight-hour workday.… The claimant frequently can reach in all directions and handle objects … using the right upper extremity. She cannot perform overhead work using the right upper extremity.

[R. 16.] The ALJ concluded that Castlel could perform past relevant work as a retail sales clerk. [R. 19.] In the alternative, the ALJ found that given her age, education, work experience, and RFC, Castlel could perform other jobs existing in the national economy such as information clerk, document preparer, and addressing clerk, all of which are sedentary jobs. [R. 19-20.] Therefore, the ALJ concluded that Castlel was not disabled under the Social Security Act. [R. 21.]

*Discussion*

The Court's review of the ALJ's decision is limited to deciding whether the findings of fact are supported by substantial evidence and whether there was an error of law. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" means "such relevant evidence as a reasonable

7

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court reviews the entire record but does not reweigh the evidence or resolve conflicts in the record; nor does the Court make credibility determinations or substitute its own judgment for that of the ALJ. *See Stepp*, 795 F.3d at 718; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ need not mention every bit of evidence in the record, *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), but she must build a "logical bridge" between the evidence and her conclusions, *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Castlel argues that the ALJ's determination that she was not disabled due to chronic fatigue is unsupported by substantial evidence. More particularly, Castlel contends that the ALJ rejected her subjective complaints because they were not supported by objective medical evidence and ignored Dr. Miller's statement that 5% to 10% of patients have chronic severe fatigue following chemotherapy and radiation. She also argues that the ALJ's failure to call a medical advisor to testify whether her combined impairments medically equal a listed impairment requires reversal.

Beginning with the second argument, the Court disagrees that the ALJ's failure to call a medical advisor to testify requires reversal. An ALJ must consider an expert's opinion on the issue of medical equivalence. *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004). The opinion of a state-agency physician or psychologist on a disability form may meet this requirement. *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (concluding an ALJ may rely on state-agency physicians' opinions in disability forms and

8

provide little additional explanation where there is no contradictory evidence on medical equivalence in the record).

The section of the ALJ's written decision specifically discussing medical equivalence does not cite any expert opinion. [R. 16.] However, the state-agency physicians and psychologists considered the issue of medical equivalence and their opinions support the ALJ's finding on medical equivalence. The ALJ's decision reflects that she considered their opinions, though she gave them "little weight" regarding the severity of Castlel's impairments. [R. 15.] Castlel points to no contradictory opinion as to medical equivalency; indeed, her treating medical providers did not offer such an opinion. Nor does she identify which listing or listings she claims she medically equaled. And it is her burden of proving that she met all the requirements of a listed impairment. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Therefore, the ALJ was not required to provide a more-detailed explanation for accepting the state-agency consultants' opinions on medical equivalency.

Instead Castlel argues that the ALJ could not have reasonably relied on the state-agency physicians' opinions because the opinions were outdated and given without the benefit of all the evidence in the record. Specifically, she points to Dr. Miller's note that 5% to 10% of patients have ongoing difficulty with severe fatigue after chemotherapy and radiation. Castlel suggests that if the state-agency physicians had reviewed this evidence, they would have found her totally disabled. But whether a certain percentage of patients experience severe, chronic fatigue is not conclusive. The issue is whether Castlel has such severe, disabling, chronic fatigue. And evidence that a certain percentage of patients do

9

experience severe fatigue is not objective evidence that *Castlel* herself suffers from such fatigue, that is, falls within that 5% to 10% of patients. Dr. Miller's observation may lend some support to Castlel's claim, but it does not conclusively prove it.

Furthermore, when a claimant does not offer an opinion on medical equivalence or request the ALJ to recontact the state-agency consultants, particularly when she is represented by counsel at the time, it is appropriate to infer that she "decided that another expert opinion would not help her." *Buckhanon ex rel. J.H.*, 368 F. App'x 674, 679 (7th Cir. 2010). Such an inference may be drawn in this case since Castlel was represented by counsel at the hearing and counsel knew that the state-agency consultants did not even think Castlel had a severe impairment, let alone an impairment that met or equaled a listed impairment. Yet counsel did not present an opinion on medical equivalence from any of Castlel's treating providers; nor did he ask the ALJ to recontact the state-agency consultants. The state-agency consultants' opinions provide substantial evidence that Castlel did not equal any listed impairment.

Besides, the ALJ considered all the evidence in the record in evaluating Castlel's claimed inability to work full-time due to chronic fatigue. The record contains sufficient evidence to support the ALJ's conclusions. Significantly, as the Commissioner points out, the ALJ gave "great weight" to the medical source statements provided by Castlel's treating physician and nurse coordinator. [R. 18.] These statements reflected a reduced range of light work activities; they did not preclude all light work; nor did they preclude all sedentary work. The ALJ's finding that Castlel could still perform full-time, light work

10

was consistent with and supported by these medical source statements. The ALJ also took into account the medical treatment records.

Further, the ALJ gave sufficient reasons for discounting Castlel's subjective complaints as to the extent and effect of her fatigue. For example, although some of the treatment records noted continued problems with fatigue, others reflected that Castlel was doing well, she was regaining her strength and energy, and she "ha[d] minimal complaints." [R. 750, 772, 780.] In addition, Castlel's daily activities and work activities suggested greater functional abilities than she claimed she had because of fatigue.[1]

Even assuming that Castlel's fatigue precluded her from performing her part-time job—a job that required her to be on her feet the entire time—on a full-time basis, the VE testified that there were other, sedentary jobs that Castlel could perform—and these jobs were at a lighter exertional level. Significantly, in evaluating Castlel's abilities in September 2014, Dr. Vannerson did not restrict Castlel from performing full-time work, that is, working 8 hours a day. Rather, the only restrictions the physician imposed were (1) not lifting more than 20 pounds, and (2) not standing or walking more than 4-6 hours a day. [R. 760.] In fact, Dr. Vannerson further opined that Castlel could sit for 8 hours in a day, stand for 6 hours, and walk for 4 hours. These functional abilities would not

---

[1] Besides, the VE testified that Castlel's past work as a retail sales clerk was at the light exertional level. He also stated that a hypothetical claimant with Castlel's RFC as found by the ALJ could perform sedentary work, and the ALJ found in the alternative that Castlel could perform sedentary jobs. Sedentary work would require less physical exertion than the part-time job Castlel actually held and likely would have less of an impact on her fatigue level.

11

preclude sedentary work.  And the ALJ found in the alternative that Castlel could perform the sedentary jobs identified by the VE.  [R. 19-20.]

Castlel maintains that the ALJ erred in finding her able to perform full-time work because if she were limited to 20 hours of work per week, the VE testified that she could not sustain full-time work.  However, the ALJ did not find Castlel limited to only 20 hours of work per week, and the RFC finding need include only those limitations that the ALJ actually finds the claimant to have.  In this case, the ALJ's RFC finding met this requirement.

Finally, Castlel makes some other arguments, but because they are undeveloped, they are waived.  *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013).

*Conclusion*

For the foregoing reasons, the Court decides that the ALJ's decision should be upheld.  An appropriate judgment will be entered.

DATED: 1/25/2017

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record